Filed 7/29/26  S.B. v. J.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| S.B.,<br>    Plaintiff and Appellant,<br><br>v.<br><br>J.R.,<br>    Defendant and Respondent. | C102802<br><br>(Super. Ct. No. 22FL04683) |

Plaintiff father S.B. (father) and defendant mother J.R. (mother) were previously in a relationship and had a daughter together (the daughter).[1]  In April 2023, mother obtained a one-year domestic violence restraining order (DVRO) against father.

In October 2024, the trial court granted mother's request to renew the DVRO for five years.  Father, appearing in propria persona, appeals from that order, arguing that (1) at the renewal hearing, the trial court denied him due process, and (2) the trial court's order rests on the false premise that his conduct during custody exchanges constituted violations of the DVRO, and (3) the trial court misapplied the standard for renewal.

In a February 2025 order, the trial court found that father failed to rebut the presumption in Family Code section 3044, which provides, where applicable, that "an

---

[1]    To protect their privacy, we refer to all involved by their initials and/or by their relationships to one another.  (Cal. Rules of Court, rule 8.90(b)(1), (10), (11).)

award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child….” (Fam. Code, § 3044, subd. (a).)[2] Father also appeals from that order, arguing that it rests on the materially false premise that he failed to comply with a 52-week batterer's treatment program requirement which, according to father, was never ordered.

We will affirm both orders.

## BACKGROUND

### *Prior Proceedings*

On April 28, 2023, after a hearing, the trial court found that mother satisfied her burden of proving by a preponderance of the evidence that father engaged in conduct that amounted to abuse as defined in the Domestic Violence Prevention Act of 1993. (§ 6200 et seq.) The court issued a DVRO for a term of one year. Mother and her son from a prior relationship were the protected persons. The court stated that, as a result of the domestic violence finding, the presumption in section 3044 would apply.

More than a year after issuance of the original DVRO, and following the extension of the DVRO, in an order filed June 18, 2024, the trial court ordered an exception to the DVRO's no-contact and stay-away orders for custody exchanges on Thursdays, when the police department where those exchanges occurred was open. In an order filed July 16, 2024, the court added Saturdays to this exception, with the additional requirements that father not exit his vehicle at the Saturday exchanges, and that an adult over 21 years old be present to facilitate those exchanges.

---

[2]  Further undesignated section references are to the Family Code.

*The Mother's Case*

E.M. was mother's mother.  She had participated in custody exchanges at a police station in Sacramento.  On two or three occasions, father asked her to deliver items to mother, but she told him that mother would not accept them.  One was a gift for Mother's Day, and one was a gift for mother's birthday.  Father made disparaging remarks about mother in the daughter's presence, including that mother was crazy and not mentally correct.  E.M. also testified that, after the most recent exchange, a car followed them, frightening her.

J.C. was mother's boyfriend.  He had been present for custody exchanges.  On every occasion, father would get out of his car.  Father would record the exchanges, including mother, with a video camera.  After the exchanges, father would sometimes wait around, seemingly for mother to come out of the police station.  After one exchange, someone who had been talking to father in the parking lot followed mother and J.C. when they drove away.  Mother was scared.

Mother testified that, under the first restraining order, father was not supposed to show up at the custody exchanges, yet he showed up every time.  Father would send gifts for her with the daughter, including flowers, cards, and a photo, and she would throw the gifts away.  Father would also try to convey items to her through others during the custody exchanges.  Additionally, he would relay messages with family members instead of communicating through the app they were supposed to use to discuss custody matters.

Mother felt uncomfortable during the custody exchanges because father was constantly recording her with a video camera.  He recorded the entirety of the exchanges.  Mother also stated that father was confrontational during the exchanges.  In one instance, he "stormed into the police station, [father] was accusing [her] of lying, speaking to the cop.  [Father] [was] very loud, aggressive, and confrontational."  On another occasion,

3

mother was inside the police station and father sent text messages stating that he would wait out front. Mother had to get a police officer to walk her outside, and the officer effectuated the custody exchange.

Father would wait outside the police station after custody exchanges until mother walked out. Then he would stand around watching her until she left. Mother testified that she had been followed by a man after a custody exchange. J.C. told her that the man who followed them had pulled into the police station parking lot at the same time as father, and he had talked with father. On another occasion, when mother and E.M. drove away from the police station, father's father followed them.

Mother testified that father had disturbed her peace or emotional calm. He never stayed 100 yards away during exchanges. She had found it necessary to call law enforcement to intervene. Mother was worried about future harm in the event the restraining order was terminated.

*The Father's Case*

Father testified that he was more afraid of mother than she was of him based on the way she abused the restraining orders. He claimed that mother was highly manipulative. He testified that no order prohibited him from being present at custody exchanges. He denied being aggressive or threatening. Father emphasized he had no criminal record. He testified he never instructed his parents to follow mother. Father acknowledged that, when performing custody exchanges, he did come closer than 100 yards of mother. He acknowledged on one occasion going into the police station and coming within approximately 10 to 15 feet of mother. He repeatedly testified that he used a video recorder during custody exchanges to protect himself from false allegations. He acknowledged breaking a door after a conflict. He acknowledged throwing a soda can against a garage door in frustration. He also acknowledged spanking mother's son

4

while he was naked in the shower.  Father denied that the court ordered a 52-week batterer's treatment program.

*Order Renewing DVRO*

In findings and an order after a hearing filed October 14, 2024, the trial court found that mother met her burden for renewal.  The court based its determination on the parties' demeanors and interactions.  The court stated that father presented as aggressive, and he spoke over witnesses, counsel, and the court.  The court noted that mother presented as fearful of father.  The court did not find credible father's representation that he was more afraid of mother than she was of him.

The trial court relied on mother's testimony about father's violations of the original DVRO, including surreptitiously recording custody exchanges, including inside the police station.  During that exchange, according to father's own testimony, he came within 10 to 15 feet of mother, and, according to mother, he was aggressive, loud, and demanding.  The court noted that, on another occasion, father texted mother to meet in front of the police station, but the court noted that the original DVRO did not include an exception for contact related to custody exchanges.

The trial court stated that father "admits he violated the no-contact order many times during the initial year the DVRO was in effect," but claimed that the trial court "erred by not granting him an exception."  The court noted that, in June and July 2024, it had issued orders allowing contact during custody exchanges, but "Father's actions up until that point violated the express provisions of the DVRO."  The court noted that father gave items to mother through others on at least three occasions, which also violated the DVRO.  The court stated that father's recording of mother during custody exchanges, surreptitiously and without her permission, violated the DVRO.

Concluding that mother satisfied her burden of proving by a preponderance of the evidence that she remained reasonably apprehensive of future abuse, the trial court

5

granted her request for renewal of the DVRO for five years, to expire on October 11, 2029.

*Hearing on Section 3044 Presumption*

Again, for context, "section 3044 establishes a rebuttable presumption that awarding custody of a child to a parent who has committed an act of domestic violence against the other parent within the previous five years is detrimental to the best interest of the child." (*In re Marriage of J.G. & K.G.* (2025) 110 Cal.App.5th 1214, 1219, fn. omitted.) We provide an abbreviated summary of the hearing testimony because much of the testimony is not relevant to any issue raised on this appeal.

*The Father's Case*

In an opening statement which father adopted as testimony, father stated that, in originally granting the DVRO, the trial court found much of mother's testimony to be lacking in credibility, and found that his conduct resulted more from the toxic character of the relationship than father's desire to exercise control over mother. Father emphasized his unsupervised visitation with the daughter as proof that the court did not deem him a danger to the daughter. Father stated that, in working with his therapist, he had learned skills such as setting healthy boundaries and recognizing behavior designed to elicit a reaction and disengage from it. He testified he had never been accused of or convicted of any crime.

The trial court asked if father had attended a domestic violence course, and father stated that he had attended 12-week anger management and parenting classes. He did not complete a 52-week course.

T.B. was father's mother. She testified that father was a great father to the daughter, and that the daughter loved being with him. Father provided a safe and stable living environment for the daughter. T.B. never heard father speak negatively about mother to the daughter.

6

A.T. was father's girlfriend. She testified that he was a good father. The daughter seemed to feel safe and comfortable when at his house. A.T. had never heard father speak negatively about mother in the daughter's presence. Rather, father encouraged the relationship between mother and the daughter. He kept photographs near the daughter's bed of mother and her family. The daughter never wanted to leave father's house.

A.T.'s sister found father to be a kind, patient, and involved parent. She testified that father provided a safe and stable home for the daughter, and she had never heard father speak negatively about mother.

*The Mother's Case*

E.M. participated in the custody exchanges. She testified that, in the daughter's presence, father referred to mother as emotionally crazy. On two or three occasions, he tried to give E.M. items to give to mother.

Mother testified that it was difficult communicating with father about the daughter. "If I say she's sick, he tells me I'm making things up or takes her for a second opinion. Stops giving her her medication. If I say somebody hit her at school, he has to verify with the school, even though there's an incident report…. It's just one thing after another. [¶] Like, he tells me I'm lying. I'm making things up in my head…. I don't know how to communicate with somebody who challenges everything I try to communicate about" the daughter.

Mother testified that father did not want the daughter to go to school. After issuance of the DVRO, the daughter regressed and stopped speaking and socializing, and she tested low in socialization and communication skills. Mother placed the daughter in a Head Start program. Father did not agree and was angry.

*Order Finding that Father Failed to Rebut the Section 3044 Presumption*

In findings and order after hearing filed February 21, 2025, the trial court found that father failed to rebut the section 3044 presumption. Among other things, the court

7

stated that to rebut the presumption, "the court should find that Father has completed a batter[er's] treatment program and parenting classes. Father completed parenting classes and a 12 week batter[er's] treatment program, but he was ordered to complete a 52 week course."

## DISCUSSION

## I

### *Self-represented Litigants and Appellate Procedure*

As a self-represented litigant, father "is entitled to the same but no greater consideration than other litigants." (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 (*County of Sacramento*).) "Accordingly, he must follow the rules of appellate procedure." (*Ibid*.) "Those rules require an appellate brief to support each point by argument and, if possible, by citation to authority and to provide a citation to the record for a factual assertion." (*Ibid*., citing Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) " 'We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' " (*County of Sacramento*, at p. 861.) "Further, we may treat a point that is not supported by cogent legal argument as forfeited." (*Ibid*.)

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "It is the appellant's burden to demonstrate the existence of reversible error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 766.)

## II

### *Due Process*

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333.) "Due process requires 'notice, an opportunity to respond, and a hearing.' " (*Shenefield v. Shenefield* (2022) 75 Cal.App.5th 619, 632.)

Father argues that the trial court's order renewing the DVRO must be reversed or vacated because he was denied basic due process at the hearing. We disagree.

A. *Mother's Failure to Timely Serve Witness List*

First, father argues that he was deprived of due process because mother did not serve him with her witness list until the day of the hearing.

Mother's trial brief, which included her witness list, was filed in the court, and served on father, on the day of the renewal hearing. Father objected to the testimony of E.M. and J.C., claiming he was not informed that they would be witnesses and he had therefore been unable to prepare for their testimony.

The trial court noted that father had been aware of the positions of the two witnesses since he was served with the request to renew with exhibits. Father acknowledged that he had received the request to renew and he was aware of its exhibits. Father admitted that he had not attempted to conduct any discovery. The court stated that it would allow E.M. and J.C. to testify. Father argued that the court's ruling violated due process, but the court found there was no surprise, the witnesses were listed on the request to renew, father knew they were percipient witnesses, and yet he took no steps to conduct discovery.

Father cites to no legal authority in this portion of his argument. As stated, " '[w]e may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory.' " (*County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

9

Moreover, we note that mother's request to renew identified E.M. as someone father had attempted to use to communicate with mother. A letter from E.M. describing the parties' relationship and incidents that occurred during custody exchanges was an exhibit attached to the request to renew. Both E.M. and J.C. were present at custody exchanges with father. Father knew E.M. and that she was present at numerous custody exchanges. He interacted with her during custody exchanges. Additionally, it appears that father knew J.C. was mother's boyfriend. He knew J.C. was present during custody exchanges. Father knew who these witnesses were, he knew that they had been present at custody exchanges, and he had interacted with E.M. at the exchanges. Father knew or should have known the nature of these witnesses' testimony as it related to the custody exchanges. In many respects, their testimony overlapped with that of mother. Father enjoyed every opportunity to cross-examine these witnesses. Father cannot plausibly claim surprise or allege an inability to adequately prepare for the testimony of these witnesses.

We conclude father has failed to establish that he was deprived of his due process rights by the failure of mother's attorney to serve her witness list earlier.

B. *"Self-directed File Review"*

Father argues that the trial court improperly "directed Father to the court file, stated that the file had long been available to him, and faulted him for not reviewing proofs of service and conducting discovery in advance." According to father, the trial court "also made clear it would not review the file for Father and would not delay trial further." Father claims that, in response to his due process objections, the trial court "plac[ed] the burden on Father to search the file himself and to have anticipated the opposing evidentiary case through discovery."

In the pages of the reporter's transcript father cites, father asked the trial court to show him where in the file J.C. was listed as a potential witness. The court responded

10

that it would not "be doing your research" or reviewing the file for him. The court stated that it would "not be reviewing the file for you to find information that can be found from you reviewing your own information." The court later continued: "[T]his file has been available to you at all times since last May for you to perform your own research in the file to identify the proofs of service, the dates, when you were served. Certainly, you could have kept track of that yourself, or you could have reviewed materials in the file before trial." Later, father asked, "So I have to go into the file myself and look for proofs of service to see if she properly served me?" The trial court responded that it could not provide father with legal advice. The court continued, "You're asking me to tell you what you need to do to protect your rights, and that I cannot do." When father stated that he was not served with a declaration, the trial court stated that the "proofs of service state otherwise." Father asked if he had "to go search for proofs of service for something she may have submitted," and the court responded that he must be diligent.

Father fails to present cogent argument or cite to authority for the premise that the trial court erred or violated his due process rights by refusing to review the file for father or offer legal advice, including on matters related to service. " 'We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' [Citations.] Further, we may treat a point that is not supported by cogent legal argument as forfeited." (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

C. *Service of Mother's Declaration on Father's Former Attorney*

Next, father argues that he was denied due process because mother served her declaration on his former counsel when that attorney no longer represented him, and the trial court allowed mother to testify to matters in that declaration. It appears the parties agreed that mother's declaration was served on counsel no longer representing father. The court ruled that it would "disregard the declaration as improperly served. What that

11

does not do, however, that does not prevent the [mother] from testifying today to information in her declaration." To this, father responded, "Thank you, your Honor."

Insofar as father objects to the declaration, the trial court did not admit it into evidence or consider it. Additionally, when the court stated it would permit mother to testify, father did not object, but rather thanked the court. Thus, father forfeited any objection to mother's testimony. (See *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 227 [husband forfeited contention that the trial court erred by considering wife's testimony by failing to object to the testimony in the trial court].)

Subsumed in this argument, father discusses four exhibits to mother's declaration that were admitted at the hearing. The exhibits were photos of: mother's cousin during an exchange "carrying things that [father] sent" (exhibit P); E.M. picking up the daughter and father "giving them a birthday gift for" mother (exhibit Q); A.T. with the daughter who was holding flowers that father sent to mother as a gift (exhibit R);, and father getting out of his car at a custody exchange (exhibit S). Father argues that the substance of the declaration was presented through mother's testimony and these exhibits, leaving him "to defend in real time without meaningful advance notice."

In her request to renew the DVRO, mother stated as reasons for her fear of father, among other things, that he violated the DVRO repeatedly, he "has used third parties to communicate with me, specifically [E.M.] and [L.M.]," and he "has used third parties to send me items and gets upset when they refuse to be used as messengers." Additionally, letters written by E.M. and L.M. detailing their experiences with father during exchanges, including his efforts to have them relay items and messages to mother, were exhibits to the request to renew.

Father's claims of surprise and inability to investigate and defend against claims concerning events occurring at custody exchanges, depicted in these exhibits, including his use of third parties to convey items and messages to mother, are meritless. Father was present for at least one of these custody exchanges. Additionally, based on information

12

in her request to renew and its exhibits, father was on notice that mother intended to prove these allegations. Moreover, father again cites no legal authority in support of his argument. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.) Father has not established any due process violation.

D. *Mother's Trial Materials*

Lastly, father argues that he was deprived of due process because the hearing "proceeded on first-time-at-trial exhibits" and " 'new claims.' " (Bold typeface omitted.) He returns to his argument that, while he had notice of the request to renew and its attachments, he did not receive mother's declaration and its exhibits, as well as mother's trial brief and witness list. His claims largely reprise his previous arguments. He also does not identify with specificity any " 'new claims' " advanced by mother or newly presented exhibits. "We are not required to scour the record in search of support for a party's factual statements and may disregard such unsupported statements." (*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 527, fn. 3.) Nor does father cite any legal authority in this portion of his argument. (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)

E. *Due Process Conclusion*

Father has failed to satisfy his burden of demonstrating any due process violation or the existence of reversible error. (See generally *Del Real v. City of Riverside, supra*, 95 Cal.App.4th at p. 766 [it is appellant's burden to demonstrate reversible error].)

III

*Renewal of DVRO*

Father argues that the renewal of the DVRO rests on a false premise, and that the trial court misapplied the renewal standard. Father argues that the trial court improperly

treated his conduct during custody exchanges as violations of the DVRO. This, according to father, "injected a false premise into the renewal analysis." We disagree.

DVROs may be renewed "upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order." (§ 6345, subd. (a).) In "deciding whether to grant a renewal request under section 6345, '[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse.' [Citation.] 'It is not enough this party entertain a subjective fear the party to be restrained will commit abusive acts in the future. The "apprehension" those acts will occur must be "reasonable." That is, the court must find the probability of future abuse is sufficient that a reasonable woman (or man, if the protected party is a male) in the same circumstances would have a "reasonable apprehension" such abuse will occur unless the court issues a protective order.' [Citation.] 'In evaluating whether the requesting party has a reasonable apprehension of future abuse, "the existence of the initial order certainly is relevant and the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy that test." ' " (*In re Marriage of Martindale & Ochoa* (2018) 30 Cal.App.5th 54, 59; accord, *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1288, 1290-1291.) "The trial court's ruling on a request to renew a [DVRO] is reviewed for an abuse of discretion." (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.) " 'To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review.' " (*In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)

The original April 28, 2023, DVRO contained a no-contact order and a stay-away order requiring father to stay 100 yards away from mother. These orders did not include any exception for peaceful contact for custody exchanges. In granting mother's request for renewal of the DVRO, the trial court relied on a number of factors. Among these, the

14

court relied on the fact that, during one custody exchange, father came within 10 to 15 feet of mother. More broadly, the court relied on the fact that father admitted that he violated the no-contact order in the original DVRO many times before exceptions were added, which occurred in June and July 2024.

Thus, the original DVRO contained no-contact and stay-away orders protecting mother, there was no exception for peaceful contact for custody exchanges, and father admitted that he violated these provisions by contacting and approaching mother during custody exchanges.

Father contends that the trial court's "custody orders directed or presupposed Father's participation in exchanges." (Bold typeface omitted.) His citations to the record for this premise are to matters occurring before the original DVRO. In an order filed January 9, 2023, the court stated that custody exchanges would be at the police station, and that, as the parties agreed, father's mother was authorized to conduct exchanges "if [father] has to go to work." This, according to father, indicated that he "was ordinarily the exchange participant." An order dated January 17, 2023, included language stating that "the parties shall exchange the child" at a specified time. Contrary to father's characterization, these do not amount to a court-ordered "exchange framework."

Even if these directives in prior orders did contemplate the structure for custody exchanges, they predated the April 28, 2023, DVRO, which did not include exceptions to the no-contact and stay-away orders for peaceful custody exchanges. Father emphasizes that, on the issuance of the original DVRO, the trial court ordered that all "prior orders not in conflict remain in full force and effect." To the extent that the court's prior orders contemplated peaceful custody exchanges carried out by the parties, those orders would conflict with the DVRO, which omitted exceptions to the no-contact and stay-away orders for peaceful custody exchanges.

Nor does the fact that the trial court ordered exceptions for peaceful custody exchanges in June and July 2024, more than a year after issuance of the DVRO, establish

15

that such exceptions always existed under the DVRO. The court ordered the exceptions *because* they were not previously contemplated by the DVRO. Neither the June and July 2024 establishment of exceptions for peaceful custody exchanges, nor the amendment of the renewed DVRO to provide for those same exceptions, establish that they existed in the original DVRO as father essentially argues. To the contrary, the record affirmatively establishes that they did not. As the trial court stated, the "original DVRO did not include an exception for contact related to custody exchanges…."

Father has not satisfied his burden of establishing that the trial court abused its discretion in granting mother's request for renewal of the DVRO.

IV

*Section 3044 Rebuttable Presumption*

Father argues that the order in which the trial court determined that he failed to rebut the section 3044 presumption must be vacated because it rests on a materially false premise that he failed to comply with a 52-week batterer intervention program requirement. We disagree that reversal is warranted.

In making determinations regarding child custody and visitation, the court's " 'overarching concern is the best interest of the child.' " (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955.) As stated, "section 3044 establishes a rebuttable presumption that awarding custody of a child to a parent who has committed an act of domestic violence against the other parent within the previous five years is detrimental to the best interest of the child." (*In re Marriage of J.G. & K.G., supra*, 110 Cal.App.5th at p. 1219, fn. omitted.) " 'This presumption is mandatory and the trial court has no discretion in deciding whether to apply it: "[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made." ' " (*Id*. at p. 1221.) " 'The legal effect of the presumption is to shift the burden of persuasion on the best interest question to the parent who the court found committed domestic violence.'

16

[Citation.] The presumption may only be rebutted by a preponderance of the evidence." (*Ibid*.; see § 3044, subd. (a).)

" 'Subdivision (b) of section 3044 sets forth the factors a court must consider when assessing if the presumption has been rebutted. First, the court must be satisfied that the award of custody is in the child's best interest. [Citation.] Second, the court must be satisfied that on balance, the [seven] additional enumerated factors support an award of custody. Those factors include whether the perpetrator has successfully completed [1] a batterer's treatment program, [2] drug or alcohol counseling, and/or a [3] parenting class, also, whether the perpetrator [4] is on probation or parole, [5] is the subject of a restraining order, or [6] has committed further acts of domestic violence.' " (*In re Marriage of J.G. & K.G., supra*, 110 Cal.App.5th at p. 1222; see § 3044, subd. (b).) A recently-added seventh factor addresses whether the perpetrator is a restrained person in possession or control of a firearm or ammunition. (§ 3044, subd. (b)(2)(G).)

" ' "We review custody... orders for an abuse of discretion, and apply the substantial evidence standard to the … court's factual findings. [Citation.] A court abuses its discretion in making a child custody order … if it applies improper criteria or makes incorrect legal assumptions." ' " (*In re Marriage of J.G. & K.G.*, *supra*, 110 Cal.App.5th at p. 1222.)

In the order filed February 21, 2025, finding that father failed to rebut the section 3044 presumption, the trial court stated: "To rebut the presumption against awarding Father Sole or Joint custody, the court should find that Father has completed a batter[er]'s treatment program and parenting classes. Father completed parenting classes and a 12 week batter[er]'s treatment program, but he was ordered to complete a 52 week course. [Citation.] To rebut the presumption, Father must show that he has not violated the existing restraining orders. Father has addressed Mother with derogatory terms since the orders were entered and has approached her within 100 yards. Mother has convinced prior courts that she remains reasonably apprehensive of future abuse. [¶] The essence

17

of domestic violence is the perpetrator seeking to control the protected party.  Father has demonstrated that he wants to control the Mother.  He wants her to agree to his interpretation of the court's orders and vary them to his satisfaction.  He does this in a manner that clearly disturbs her peace.  [¶] … [¶]  In conclusion, the court believes that both parents want what is best for their daughter.  The father has committed domestic violence and has not followed the court's orders.  Therefore the presumption has not been rebutted."

On appeal, father relies on an order filed June 9, 2025, included in the record as augmented, in which the trial court granted his motion to correct a clerical error on the January 15, 2025, first amended renewed DVRO.  "The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed…."  (Code Civ. Proc., § 473, subd. (d).)  " 'The difference between judicial and clerical error rests not upon the party committing the error, but rather on whether it was the deliberate result of judicial reasoning and determination.  The distinction between clerical error and judicial error is whether the error was made in rendering the judgment, or in recording the judgment rendered.' "  (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 797.)  Having undertaken a review of the original DVRO, the trial court found that a batterer intervention program "was not included as part of the original DVRO but was struck out by" the issuing judge.  Therefore, the first amended renewed DVRO filed January 15, 2025, contained a clerical error in checking box 24, indicating a batterer intervention program had been ordered, as that requirement was not included as part of the original April 28, 2023, DVRO.  The court issued a second amended renewed DVRO.  To be clear, no party here has appealed from this June 9, 2025, order, and thus this order itself is not the subject of controversy on appeal.

As stated, in concluding father failed to rebut the section 3044 presumption, the trial court relied, among other things, on father's failure to complete a court-ordered 52-

18

week batterer's treatment program.  In light of the order filed June 9, 2025, there is not substantial evidence that father was ordered to complete a batterer's treatment program or that this section 3044, subdivision (b)(2)(A) factor should militate against his efforts to rebut the section 3044 presumption.

Father argues that, because he was not ordered to complete a 52-week batterer's program, and because the trial court based its decision, in part, on his failure to do so, the order finding that he failed to rebut the section 3044 presumption "rests on a materially false premise" and must be reversed.  He argues that "the rebuttal calculus is distorted.  This is prejudice.  The error did not concern a collateral detail; it went to Father's ability to rebut the presumption and to the court's ultimate custody determination.  Without the false 'noncompliance' premise, the court must reassess rebuttal under the correct factual landscape and the statutory factors that apply."  He argues that a "ruling that turns on a nonexistent requirement is reversible legal error and, at minimum, must be vacated so the trial court can conduct a new section 3044 analysis under correct facts and law."  He further argues that we may not "presume the error was harmless because other factors may have supported the ruling….  Where a custody decision rests in part on a materially false premise, the proper remedy is to vacate and remand for the trial court to perform the section 3044 analysis anew, using only accurate premises and applying the correct legal framework."

In this portion of his brief, father has cited no legal authority in support of his arguments that the trial court's error in relying on the fact that he failed to complete a 52-week batterer's treatment program is reversible error.  (See *County of Sacramento, supra*, 65 Cal.App.5th at p. 861.)  Elsewhere in his brief, he does cite to a case where the appellate court reversed because the trial court "expressly relied on a consideration section 3044 forbids" (*Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 417), resulting in a trial court decision that was "infected by legal error…." (*Id*. at p. 418.)  He cites another case in which the appellate court issued a peremptory writ of mandate where a "move-away

19

order terminated the custody trial without affording Father an opportunity to meaningfully rebut the section 3044 presumption," where the trial court "focused upon one of the listed statutory factors in rebutting the presumption: whether he had completed the 52-week batterer's program," which "was a physical impossibility because only 32 weeks had elapsed since the court directed him to attend," and where the trial court nonetheless concluded the custody proceedings, finding " 'that Father has not met his burden as to [section] 3044.' " (*Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1056, fn. omitted.) Neither of these cases are analogous to the circumstances here. The trial court did not rely on considerations forbidden by section 3044, these proceedings were not "infected by legal error" (*Ellis*, at p. 418), and father was afforded ample opportunity to rebut the section 3044 presumption. These cases do not compel the conclusion that the trial court's error is per se reversible and an assessment of prejudice is inappropriate.

"Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.' [Citation.] Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078.)

In concluding that father failed to rebut the section 3044 presumption, in addition to father's failure to complete a 52-week batterer's treatment program, the trial court stated that father "must show that he has not violated the existing restraining orders. Father has addressed Mother with derogatory terms since the orders were entered and has approached her within 100 yards." Thus, the court considered the statutory factor that father was restrained by a restraining order and had not complied with its terms and conditions. (See § 3044, subd. (b)(2)(E).)

The court also considered whether father "has committed further acts of domestic violence" (§ 3044, subd. (b)(2)(F)), stating that the "essence of domestic violence is the perpetrator seeking to control the protected party. Father has demonstrated that he wants to control the Mother. He wants her to agree to his interpretation of the court's orders and vary them to his satisfaction. He does this in a manner that clearly disturbs her peace." (See § 6211 [defining domestic violence as "abuse" perpetrated against enumerated persons]; *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1497 ["section 6320 broadly provides that 'disturbing the peace of the other party' constitutes abuse for purposes of the DVPA"].)

Following two "aside[s]", the court concluded: "The father has committed domestic violence and has not followed the court's orders. Therefore the presumption has not been rebutted."

Father has advanced no factual or legal argument with citation to authority for the premise that, in the absence of the error in relying on his failure to complete a 52-week batterer's treatment program, it is reasonably probable that the trial court would have found that he rebutted the section 3044 presumption. Instead, he has only asserted in conclusory fashion, without cogent legal argument and citation to authority (see *County of Sacramento, supra*, 65 Cal.App.5th at p. 861), that the error was prejudicial warranting reversal. As such, he has failed to satisfy his burden of demonstrating the existence of reversible error. (See *Del Real v. City of Riverside, supra*, 95 Cal.App.4th at p. 766.)

## DISPOSITION

The order dated October 11, 2024, and filed October 14, 2024, granting renewal of the DVRO for a term of five years is affirmed. The order filed February 21, 2025, concluding that father failed to rebut the section 3044 presumption is affirmed. In the interests of justice, no costs are awarded because mother did not file a respondent's brief. (See Cal. Rules of Court, rule 8.278(a)(5); *Farnum v. Iris Biotechnologies Inc.* (2022) 86 Cal.App.5th 602, 614.)

\s\
_____
KRAUSE, J.

We concur:

\s\
_____
RENNER, Acting P. J.

\s\
_____
BOULWARE EURIE, J.